**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

*David E. Patton*
Executive Director and
Attorney-in-Chief

*Deirdre D. von Dornum*
Attorney-in-Charge

September 14, 2023

By ECF and Email
The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Tyler Johnston, 23-cr-13 (NRM)

Dear Judge Morrison:

    The Court should deny the government's request for an extension to September 21 of the 48-hour stay of the September 13 bond modification order in this case.

    Four criteria are relevant in considering whether to issue a stay of a bail decision: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. . . . There is substantial overlap between these and the factors governing preliminary injunctions." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002)

    "The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be better than negligible. . . . By the same token, simply showing some possibility of irreparable injury, fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (internal quotation marks and citations omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id*. at 435.

    Courts in this district, and the Second Circuit Court of Appeals, do not simply rubber stamp government requests for stays of initial pretrial release orders, to say nothing of bond modifications for defendants on bail who already have a proven record of compliance. *See, e.g.*, *United States v. Deutsch*, 18-cr-502 (FB), ECF No. 68 at 3 (denying government's request for a stay of release order in case where defendant charged with production of child pornography involving at least four victims, and where defendant had history of manipulation during pendency of the case, dishonesty, and inducing his proposed sureties to sign the bond under false

pretenses); *aff'd*, No. 20-1745 (2d Cir. July 2, 2020) (denying government's request for stay pending appeal).

**Likelihood of Success on the Merits**

As to the first factor, the government cannot show a likelihood of success on the merits. The government bears a heavy burden in a bail appeal. Bail rulings are reviewed for clear error, a standard that "does not entitle a reviewing court to reverse . . . simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Reversal is allowed only if the "entire evidence" makes "definite" that "a mistake has been committed." *Id*. (citation and internal punctuation omitted). Thus, if a bail ruling is "permissible" or even "plausible" given the record, then "the court of appeals may not reverse it." *Id.* at 574. *See also, e.g., United States v. Mattis*, 963 F.3d 285, 291-92 (2d Cir. 2020) ("'As a rule, we apply deferential review to a district court's bail determination and will not reverse except for clear error.'. . . [W]e recognize the constraints on our appellate review.") (citation and internal punctuation omitted). This is so even if the appellate court "would have weighed the evidence differently" than the District Court. *Anderson*, 470 U.S. at 574. Furthermore, the Bail Reform Act requires bail conditions to "reasonably assure," 18 U.S.C. § 3142(e)(1), against danger. A guarantee is not required.

Here, the government cannot meet this exacting standard on a bail appeal and is unlikely to succeed on the merits. The bond modification at issue reasonably assures against any risk of danger, and the government is unable to demonstrate that the modification is not "permissible" or "plausible."

Enclosed under separate cover as Exhibit A is a video which depicts the drive from the work house (Mr. Johnston's proposed residence), along the road referenced at yesterday's conference, into the main property, past the poultry building, and up a long driveway to the main residence. The video shows that the work house and main house are sufficiently distant from each other to reasonably ensure compliance with all previously imposed bail conditions. Neither Mr. Johnston nor the complainant would have any reason or occasion for even incidental contact. The video also depicts a fence around the main property, demarcating with a physical barrier the perimeter that Pretrial Services will enforce via GPS monitoring and an alert system.

The bond modification also closely mirrors the living arrangements under the original bail conditions. ECF No. 18. At yesterday's appearance, the government argued that at Fort Hamilton Mr. Johnston had no occasion to be anywhere near the family's on-base housing, because his barracks, office, and the PX and commissary were all in a different part of the base. This is not so. The barracks and family residence were less than 1,000 feet apart, and connected by a main street. Mr. Johnston would have needed to walk past the family residence in order to access the gym, ballfields (where he would take his other minor children to play), and other base services. The complainant, similarly, would have had to walk past the barracks on their way to and from school. Despite the proximity, Mr. Johnston has had zero compliance issues during his 8 months on bail (and during the family court proceedings and Army investigation that date back even further) and scrupulously abided by the rules, often speaking with Pretrial and his counsel to clarify certain restrictions. For these reasons, and the reasons articulated in prior bail

submissions and on the record, the government is unlikely to succeed on the merits of any appeal.

**Irreparable Injury**

The government also cannot show that there "*will* be irreparabl[e] injur[y] absent a stay." *Nken*, 556 U.S. at 434 (emphasis added). "[S]imply showing some possibility of irreparable injury, fails to satisfy the second factor." *Id*. at 434-35. This is especially so given the "*reasonable* assurance" against danger standard under the Bail Reform Act. 18 U.S.C. § 3142(e)(1) (emphasis added).

Further, denial of an extension of the stay does not in any way impinge on the government's ability to appeal the bond modification order if it deems it appropriate. Should the government prevail in its appeal, Mr. Johnston would be required to immediately leave the proposed residence and the Court would craft a new bail condition in conformity with any guidance from the Court of Appeals. The government cannot show that there will be irreparable injury in the interim.

**Injury to Mr. Johnston**

The Court need not reach the other *Nken* factors because the first two are dispositive here. *See Nken*, 556 U.S. at 434 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."). But the harm to Mr. Johnston from an extended stay is clear. He will be discharged from the U.S. Army on September 19 and must leave Fort Hamilton. His bail conditions prior to the modification restrict him to New York City and Long Island, an area where he has no family, was only living because his military duties took him here, and where he cannot afford to live given his lack of employment as of next Tuesday. An extension of the stay through September 21 would leave him in an untenable limbo.

Thank you for your consideration of this letter.

Respectfully Submitted,

_____/s/_____
Samuel Jacobson
Assistant Federal Defender
(718) 407-7429

cc:     all counsel of record (by ECF)