

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR:TBM/MS            *271 Cadman Plaza East*
F. #2021R00359        *Brooklyn, New York 11201*

March 31, 2025

By ECF

The Honorable Nina R. Morrison
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

         Re:     United States v. Tyler Scott Johnston
                    Criminal Docket No. 23-13 (S-1) (NRM)

Dear Judge Morrison:

       The government respectfully submits this letter supplementing its oral argument on March 27, 2025, objecting to numerous of the defendant's exhibits as inadmissible.

       Specifically, the defendant seeks to admit: (1) his own text conversations with his wife under the residual hearsay exception under Federal Rule of Evidence ("Rule") 807; (2) three separate text conversations between different parties under the Rule of Completeness, Rule 106; (3) a poem and video to prove Jane Doe's character for untruthfulness as "intrinsic" evidence falling outside Rule 608(b)'s absolute bar on the use of "extrinsic" evidence to prove character; and (4) almost **_23,000 messages_** between Doe and others as not for their truth, and thus outside the definition of hearsay under Rule 402.

       As discussed below, the defendant is either grossly mistaken as to the law or deliberately leading the Court to commit error. Because the defendant's arguments defy black letter law, the exhibits in their present form and for their proffered purposes are inadmissible and should be precluded.

       I.     <u>The Proponent of Evidence Bears the Burden of Establishing its Admissibility</u>

       As an initial matter, the defendant misunderstands his role as the proponent of evidence. At oral argument, the defendant argued his proffered exhibits were "really important evidence and . . . it is concerning to us that this type of evidence which is so intrinsic to our defense and [ ] goes to the heart of Jane Doe's credibility[,] that the Government is trying to exclude these from coming in." Mar. 27, 2025 Oral Arg. Tr. ("Tr.") at 973.

"Evidence is placed before the jury when it satisfies the technical requirements of the evidentiary Rules, which embody certain legal and policy determinations." Bourjaily v. United States, 483 U.S. 171, 175 (1987). The offering party bears the burden of establishing the admissibility of the proffered evidence under the Rules. See id. at 176. "[A] criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible." United States v. Yousef, 327 F.3d 56, 128 (2d Cir. 2003).

The defendant's attempt to flip the tables (and indeed burden) on the government contravenes well-established law. His evidence—however important—must satisfy the Rules to be admissible, as is true of every party that appears before the Court.

II. Evidence is Not Trustworthy Under the Residual Hearsay Exception Simply Because It Is Authenticated; There Must Be Guarantees of the Statement's Sincerity, Which the Defendant's Proffered Evidence Entirely Lacks.

For the first time on March 27, 2025, the defendant argued that his own text messages are admissible under the residual hearsay exception of Rule 807. Plainly, they are not.

Rule 802 bars hearsay evidence, outside enumerated exceptions. As the Supreme Court explained:

> [Rule 802] is premised on the theory that out-of-court statements are subject to particular hazards. . . . [T]he ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

Williamson v. United States, 512 U.S. 594, 598 (emphasis added). "The principal vice of hearsay is that it offers the opponent no opportunity to cross examine the declarant on the statement that establishes the declared fact." United States v. Reyes, 18 F.3d 65, 69 (2d Cir. 1994).

The residual hearsay exception in Rule 807 applies where (1) "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement;" and (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807 (emphasis added). Further, Rule 807 requires that the proponent provide notice of his intent to offer evidence under the exception "in writing before the trial or hearing" absent "good cause" for failure to do so. "Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) (internal quotation marks and citation omitted).

The Second Circuit has established a five-part test for the admissibility of evidence under the residual hearsay exception. "A statement will be admitted under this rule if

(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." United States v. Morgan, 385 F.3d 196, 208 (2d Cir. 2004) (internal quotation marks omitted). See United States v. Hill, 658 F. App'x 600, 604 (2d Cir. 2016) (emphasizing that the statement "must satisfy all of these requirements, and we have explained that it must be particularly trustworthy"). To establish trustworthiness, the defendant "must point to evidence that corroborates both the declarant's trustworthiness and the truth of the statement." United States v. Paulino, 445 F.3d 211, 220 (2d Cir. 2006). When evaluating trustworthiness, the first "'risk peculiar to this kind of evidence [is] insincerity.'" United States v. Mejia, 948 F. Supp. 2d 311, 316 (S.D.N.Y. 2013) (quoting Schering Corp v. Pfizer Inc., 189 F.3d 218, 232-33 (2d Cir. 1999)).

       Here, the defendant has offered DX-D5 his own false exculpatory statements reflected in, a text conversation from May 28, 2020 between the defendant his wife regarding the purchase of wigs for Doe: "[t]his is a conversation between mother and father about gifts that are appropriate to buy for their children because of things like helping out with the kids and the like," and thus establish that the purchase of the wigs was innocent as opposed to part of a quid pro quo with Jane Doe for sex. Tr. at 980-81. The Court queried why the text messages were not "more probative on the point" than live testimony, "because it's contemporaneous evidence, it's actual direct, trustworthy proof that these purchases were made, of the conversations between them." Tr. at 976-77. See id. at 976 ("[W]hy don't they have the right to put that in as the most trustworthy proof of what was taking place between the parents in May rather than just have the testimony of Mrs. Johnston or potentially their own client?").

       DX-D5 fails to meet the first prong of Rule 807 not because it is inauthentic—no one doubts that it is an accurate extraction pulled from a cellphone—but instead because it is not "particularly trustworthy." Fed. R. Evid. 807. The defendant is charged with having sexually abused Doe for half a year prior to the text exchange with his wife, creating a motive to lie about his rationale for the purchase of the wigs. See Mejia, 948 F. Supp. 2d at 316 (describing "insincerity" as undermining the trustworthiness of this evidence). Moreover, the defendant fails to point to any evidence that corroborates the sincerity of his statements in the text messages concerning his motive. See Paulino, 445 F.3d at 220 (finding the proponent must point to corroborative evidence to be admissible under Rule 807).

       DX-D5 also fails to meet the second prong of Rule 807 because the most probative evidence of the defendant's motive for purchasing the wigs is in-court testimony, under oath, in view of the jury, subjected to cross-examination. See Williamson, 512 U.S. at 598. See also Parsons, 929 F.2d at 907-08 (explaining that declarant's testimony would be more probative than proffered hearsay and holding that residual hearsay exception did not apply); Mejia, 948 F. Supp. 2d at 318 (denying a defendant's motion to admit a statement under Rule 807 and noting that "[i]n general, where the declarant is available to testify, hearsay testimony is not more probative than the in-person testimony of the declarant"); United States v. Zapata, 356 F. Supp. 2d 323, 328 (S.D.N.Y. 2005) (holding that residual exception did not apply where the defendant could subpoena the declarant to testify).

Accordingly, because DX-D5 is neither trustworthy nor the most probative evidence on the matter, it is inadmissible under the residual hearsay exception.

III. The Rule of Completeness is Not a Backdoor Through Which the Defendant May Offer "His Side of the Story" Without A Witness Testifying and Being Subject to Cross-Examination.

Next, the defendant argues that three text conversations between three different groups of people are necessary "context" admissible under the Rule of Completeness. Yet, the government has had before the Court since January 2025 binding Second Circuit precedent concerning the narrowness of the Rule of Completeness, making plain that the defendant's proffered evidence does not fall within its limited scope. See ECF No. 125 at 8-10. Nor has the defendant cited any case law to the contrary. See ECF No. 136 at 4 (offering no case law).

"When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982); see Tr. at 941 (offering, as the only case in support of his argument, Marin). A limited exception is created by Rule 106, which allows for the introduction "of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Those statements must be "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Castro, 813 F.2d 571, 576 (2d Cir. 1987) (emphasis added). As the Second Circuit explained in no uncertain terms, "the rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony." United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010).

The Second Circuit has repeatedly denied motions to admit statements under Rule 106 where they were not necessary to clarify the admitted portions, carefully parsing each of the proffered statements. For example, in United States v. Fawwaz, the defendant's proffered statements were found to be independent of the admitted statements; "the admitted portions of the transcript address[ed] Fawwaz's state of mind, while the excluded portions involve[d] a discussion of Fawwaz's response to a document he received." 691 F. App'x 676, 678 (2d Cir. 2017). Similarly, in United States v. Hill, the defendant's false exculpatory statements on prison calls ("I am innocent") were inadmissible under Rule 106, because they did not contextualize or explain the admitted portions, "in which [the defendant] urged an associated to locate [a third party] and expressed hope that the [third party] would 'stay free.'" 658 F. App'x 600, 604-05 (2d Cir. 2016). In United States v. Gonzalez, the defendant's post-arrest statement that a third party kept him "out of the drug business to protect him" was inadmissible, because it had no bearing on the admitted evidence from his post-arrest statement that he knew another person "robbed drug dealers." 399 F. App'x 641, 645 (2d Cir. 2010). Likewise, in United States v. Johnson, "[t]he admitted portion of the confession related to . . . plans to execute the robbery, while the redacted portion related to the execution of the robbery," and thus the omitted portion was "neither explanatory of nor relevant to the admitted passages." 507 F.3d 793, 796-97 (2d. Cir. 2007) (internal quotation marks and citation omitted). In United States v. Jackson, the entirety of a 42-minute-long tape was inadmissible under the Rule, where the government included a 90-second portion in which a third party warned the defendant that the scheme constituted extortion, and where the remainder of the tape "consisted largely of [the defendant's]

4

own self-serving statements, which, as offered by him, are inadmissible hearsay." 180 F.3d 55, 73 (2d Cir. 1999). And in United States v. Marin, a third party's statements concerning the defendant putting a bag in a trunk were inadmissible under the Rule, where the admitted portions concerned the defendant asking to be driven to a location but "omitted all reference to the bag"; thus the omitted statement "was an entirely different matter . . . neither relevant to the rest of the statement nor necessary to explain or place in context the admitted portion." 669 F.2d at 84.

Here, the government has offered four text messages in exhibits GX-318A and GX-318B, which establishes that the defendant was aware his wife was out of the home on February 27, 2021, between particular hours.

| 2/27/2021 11:34:47 a.m. | Defendant: Did you make it? |
| --- | --- |
| 2/27/2021 11:35:03 a.m. | Mrs. Johnston: Yeah we are at home depot |
| 2/27/2021 11:35:26 a.m. | Defendant: Okay be careful let me know when you are on the way back. |
|  |  |
| 2/27/2021 3:54 p.m. | Mrs. Johnston: Almost back to base. Running into the commissary. Need anything? |

The defendant does not dispute that Mrs. Johnston was indeed out of the house during those hours, or that the defendant was aware of that fact. Nonetheless, the defendant has offered DX-D2, DX-D3, and DX-D4—three text conversations between three different sets of people from February 27, 2021, purportedly necessary for "context," to show the various other (and unrelated) events occurring between those hours, including a friend coming over and trips to Burger King.

The defendant's proffered evidence fails under even the most generous reading of Rule 106. Far from requiring admission "in fairness" to place in context the defendant and his wife's text messages—concerning the time she was out of the home shopping—the defendant's proffered text messages seek to establish, through inadmissible hearsay, all the other things that were happening that day.[1]

The fact that the defendant, Mrs. Johnston and Doe sent text messages to different people on the same day is consistent with how any modern user of a cellphone communicates. It

---

[1] The exhibits also fail on relevance grounds. DX-D4, for example, contains entirely irrelevant banter between the defendant and his wife. See DX-D4 (Mrs. Johnston: "I will babe. I love you." Defendant: "I love you. Find what we need?" Mrs. Johnston: "Got the stuff for the stove cover." Defendant: "Nice!" Mrs. Johnston: "Bought [sic] to go by American eagle to get [Doe] some Jean's [sic].").

5

would be a gross expansion of Rule 106 to admit all messages sent or received by a user simply because those messages were sent or received on the same day as messages otherwise properly admitted pursuant to an applicable hearsay exception.  See United States v. Aungie, 4 F.4th 638, 647 (8th Cir. 2021) (rejecting defendant's attempt to "introduce specific text messages separate from the text conversations admitted" as "the excluded texts were unnecessary to complete the context of the included communications because they were not parts of the same conversation").  Notably, the defendant has failed to cite to a single case supporting his unfounded proposition that defense theories may be introduced through inadmissible hearsay to provide "context" for relevant and admissible government evidence.

Accordingly, DX-D2, D-3, and D-4 are inadmissible under Rule 106.

IV. The Defendant's Erroneous Distinction Between "Intrinsic" and "Extrinsic" Evidence Under Rule 608(b) is Entirely Unfounded.

The defendant seeks to admit a poem transcribed—but not authored—by Doe describing liars as monsters and a video of Doe stating she can make herself cry, which the defendant argued fell outside Rule 608(b)'s absolute bar against "extrinsic" evidence to prove character, because it was "intrinsic" to the defense.  See DX-E1, DX-E2.

Rule 608(b) prohibits admission of extrinsic evidence to prove specific instances of a witness's conduct to attack or support the witness's character for truthfulness.  Fed. R. Evid. 608(b).  It serves as an "absolute prohibition on extrinsic evidence" for the purpose of attacking or supporting character for truthfulness.[2]  Fed. R. Evid. 806 Adv. Comm. Notes.

Extrinsic evidence is "[e]vidence that is calculated to impeach a witness's credibility, adduced by means other than cross-examination of the witness.  The means may include evidence in documents and recordings and the testimony of other witnesses."  Black's Law Dictionary, 12th ed (citing Fed. R. Evid. 608(b)) (emphasis added).

Under Rule 608(b), "if the witness denies engaging in untruthful misconduct, the cross examiner must 'take the witness' answer,' meaning the questioner may not introduce extrinsic evidence to contradict the witness' denial through other witness testimony or the introduction of impeaching documents, or indeed any other evidence than the cross-examination . . . ."  Paul F. Rothstein, *The Federal Rules of Evidence* 312 (3d ed. 2003).  "Because of this categorical bar on extrinsic evidence of prior instances of conduct, the cross-examiner may not introduce documents or other proof to contradict a witness who denies committing the prior act or does not recall all or some of its details."  United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) (citing Weinstein's Evid. Manual § 12.03[3][a]; United States v. Nelson, 365 F.Supp.2d 381, 386 (S.D.N.Y.2005)).  See United States v. Smith, 727 F.2d 214, 221 (2d Cir. 1984) (finding error in district court's admission of extrinsic evidence during cross-examination to prove an act under Rule 608(b)); United States v.

---

[2] "Impeachment by contradiction, as opposed to evidence of a witness's character for truthfulness or untruthfulness, is a permissible exception to the general proscription of Rule 608(b)."  United States v. Rodriguez, 539 F.Supp.2d 592, 595 (D. Conn. 2008).

Benedetto, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (finding inadmissible testimony concerning the defendant's acceptance of other bribes during the charged time period as "extrinsic evidence").

The defendant argues DX-E1 (poem) and DX-E2 (video) fall outside Rule 608(b) because (a) they are not being admitted to attack character for truthfulness, and (b) they are "intrinsic" evidence, not "extrinsic" evidence. Neither argument has merit.

First, the defendant claimed, "I don't think we're attacking her character for truthfulness. We're attacking the credibility of these allegations . . . it's an attack of her truthfulness of these allegations." Tr. 114. Moments later, however, with respect to the poem describing liars as monsters, defense counsel argued, "Jane Doe has adopted this poem as her poem, has sent it to two friends and saying: This is my poem, look at my poem, has adopted it as a poem that is reflective of how she describes herself at the very time period that she's making the . . . false allegations against Mr. Johnston, goes directly to her credibility." Tr. at 988. It is beyond dispute that neither exhibit involves Doe's commentary on the charged conduct. The first, a poem, is a matter of fiction transcribed from literature (not even conceived Doe), and the second, is Doe commenting on her ability to bring herself to tears. Plainly, the only relevance of the exhibits is to show Doe's character for untruthfulness, bringing the exhibits squarely within Rule 608(b).

Second, the defendant's distinction between "intrinsic" and "extrinsic"—which appears to erroneously conflate intrinsic evidence with direct evidence—is entirely unfounded. See Tr. 997-998. In the context of Rule 608(b), "extrinsic" evidence simply means evidence adduced other than by testimony of the witness in question. See Black's Law Dictionary; Smith, 727 F.2d at 221; Brown, 2009 WL 497606, at *3. The government has failed to find a single case making such a distinction, nor has the defendant provided one.

Because both DX-E1 and DX-E2 are extrinsic evidence—a poem and video— offered to prove Doe's character for untruthfulness, their admission is barred by Rule 608(b).

V.  **The Defendant's Attempt to Introduce *Almost 23,000* Messages Between Doe and Her Friends as "Not For Their Truth" Must be Rejected.**

Finally, the defendant seeks to admit almost 23,000 Discord messages between Doe and her online friends in 15 different text conversations, purportedly not for their truth.

"Whether a statement is hearsay depends upon what use the offeror intends the fact-finder to make of it." United States v. Dietrich, 865 F.2d 17, 20 (2d Cir. 1988). "We review each statement to determine whether it is admissible, either because it is not hearsay or because it is hearsay subject to an enumerated exception, or whether it is inadmissible hearsay." United States v. Cummings, 858 F.3d 763, 773 (2d Cir. 2017).

At oral argument, the defense offered, "I can go through some of the Discord chats, generally, because many of them are not being introduced for the truth. . . . They're outlandish and for the purpose of – of seeking attention from the other people in this chat." Tr. 993. Yet, the defendant cited to specific messages that it plainly was seeking to introduce for their truth: "[T]here are several chats in which Jane Doe herself says: I seek attention. I love my

7

friends because I'm seeking attention. . . . She says: I've ruined the group because of my attention-seeking and this is why I can't have friends." Tr. 994.

On that oral proffer alone, the Court indicated: "I've ruled that broadly speaking, though I haven't reviewed all of them, the overall purpose for which they're offering it is not barred by the rule against hearsay. . . . I'm not going to direct them to do any redactions, but I would encourage them to consider what they can live without in these text messages without compromising the defense they intend to put on. If there's nothing they want to take out, then before they come in you can take it up with me and I'll decide item by item." Tr. at 997.

It is the defendant who must demonstrate that the exhibits are admissible. See Bourjaily, 483 U.S. at 175 (holding evidence may be placed before the jury only after it satisfies "the technical requirements of the evidentiary Rules" and that the offering bears the burden of establishing admissibility); cf. Yousef, 327 F.3d at 128 (finding a defendant's right to present a full defense "does not entitle him to place before the jury evidence normally inadmissible"). The government respectfully submits that an item-by-item account of each of the almost 23,000 messages is necessary to ensure the exhibits are indeed being offered for permissible, non-hearsay purposes and are relevant. Even a cursory review of the Discord messages demonstrates that much is in fact inadmissible and irrelevant. See DX-G14 (lines 2994 to 3478 containing spam and emojis); id. (line 2175 to 2238 (repeatedly transmitting the message, "AAAAAAAAAAA"); id. (line 181 to 215) (repeatedly transmitting the message, "Abby").

\* \* \* \* \*

Because the defendant's exhibits are inadmissible hearsay, they should be precluded in their current form and for their offered purposes.

                    Respectfully submitted,

                    JOHN J. DURHAM
                    United States Attorney

By:      /s/
                    Tara B. McGrath
                    Margaret Schierberl
                    Assistant U.S. Attorneys
                    (718) 254-7000

cc:    Clerk of the Court (NRM) (via ECF)
       Counsel of Record (via ECF and E-Mail)